1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

JUSTIN LUJAN WETHERBEE,                    NO.  C12-113-JPD

9
                        Plaintiff,

10
        v.                                 ORDER

11
MICHAEL J. ASTRUE, Commissioner of
Social Security,

12
                        Defendant.

13

14       Plaintiff Justin Lujan Wetherbee appeals the final decision of the Commissioner of the

15 Social Security Administration ("Commissioner") which denied his applications for Disability

16 Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

17 after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18 the Commissioner's decision is AFFIRMED.

19                      I.       FACTS AND PROCEDURAL HISTORY

20       At the time of the administrative hearing, plaintiff was a 26 year-old man with a high

21 school education.  Administrative Record ("AR") at 67, 78.  His past work experience includes

22 employment as in the Army, and as a security guard/traffic controller.  AR at 17.  Plaintiff was

23 last gainfully employed in 2009.  AR at 12.

24

ORDER - 1

On July 10, 2009, plaintiff filed a claim for DIB, alleging an onset date of June 30, 2009.  AR at 10.  Plaintiff asserts that he is disabled due to Lisfranc fracture in right foot, status post tarsometatarsal fusion in the right foot, degenerative joint disease and degenerative joint disease in joints adjacent to the midtarsal joint.  AR at 12-13.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 10.  Plaintiff requested a hearing which took place on June 9, 2010.  AR at 47-92.  On July 9, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform his past relevant work and additional jobs existing in significant numbers in the national economy.  AR at 10-19.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 5.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

ORDER - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Wetherbee bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

ORDER - 4

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On July 9, 2010, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social
      Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since June
      30, 2009, the alleged onset date.

3.    The claimant has the following severe impairments: Lisfranc fracture
      in right foot, status post tarsometatarsal fusion in the right foot, and
      degenerative joint disease.

4.    The claimant does not have an impairment or combination of
      impairments that meets or medically equals one of the listed
      impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant
      has the residual functional capacity to perform light work as defined in
      20 CFR 404.1567(b) except he is able to stand/walk for up to 2 hours
      per day for 30 minutes at a time with the option to sit down at his work
      station for a few minutes between standing/walking periods; he must
      avoid walking on rough surfaces; he is able to sit without restriction;
      he is able to perform all postural movements occasionally (bend,
      stoop, crouch, kneel, ascend and descend stairs/ramps) except he
      cannot climb ladders, ropes, or scaffolding and he cannot balance; he
      is able to only frequently push or pull with his right lower extremity,
      such as foot pedals and foot controls; and he must avoid hazards like
      heights.  He has no other limitations or restrictions.

6.    The claimant is capable of performing past relevant work as a security
      guard/traffic controller.  This work does not require the performance

of work-related activities precluded by the claimant's residual functional capacity.

7.      The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2009, through the date of this decision.

AR at 12-18.

## VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Whether the ALJ erred in finding claimant's degenerative changes in his right foot to be non-severe?

2.      Whether the ALJ erred in determining claimant had the residual functional capacity to perform light work except that he could stand/walk for two hours for 30 minutes at a time with the option to sit down at work for a few minutes, and that he had no restrictions in sitting?

3.      Whether the ALJ erred in finding claimant able to perform past work as a security guard/traffic controller, and in the alternative, at other work as a surveillance system monitor, paramutual ticket checker, or telephone solicitor?

Dkt. No. 13 at 1.

## VII.      DISCUSSION

### A.      The ALJ Did Not Err at Step 2 or in His RFC Determination

Plaintiff sustained a serious non-combat foot injury while in the United States Army in November 2003. He was ultimately medically discharged from the Army in 2005, and was awarded a 20% disability VA rating due to the injury, which was subsequently raised to 30%. AR at 431-32. At Step 2 in the sequential disability review process, the ALJ found that plaintiff's severe impairments were Lisfranc fracture in the right foot, status post tarsometatarsal fusion in the right foot, and degenerative joint disease. AR at 12. The ALJ's opinion also provides:

ORDER - 6

His attorney suggests that he may have degenerative joint disease in joints adjacent to area where he was injured and subsequently treated. Provider Michael Picco, DO, wrote in a treatment note that the claimant has degenerative joint disease/stress injury in the midtarsal joint. Dr. Picco then explained,

> "I advised him that given the nature of his fusion he <u>may</u> have degeneration in the surrounding joints including the midtarsal joint over time and it could at some point require subsequent surgery for fusion of this…"

(Ex. 5F, p.8) (emphasis added [emphasis in original of ALJ opinion]). Dr. Picco did not diagnose the claimant with actual degenerative joint disease in the claimant's surrounding joints. Medical expert Arthur Lorber, MD, testified that it is speculative with respect to whether the claimant will develop degenerative joint disease in his surrounding joints. Indeed, the record contains no objective evidence of degenerative joint disease in his surrounding joints.

Moreover, the light residual functional capacity encompasses the claimant's alleged symptoms and limitations. Nothing in the record shows that his possible degenerative joint disease in surrounding joints has caused symptoms that are separate and distinct from those symptoms already associated with the above severe impairments. For example, provider M. Carrie (sic) Morantes already considered this possible surrounding joint degenerative joints disease condition when she determined that he is capable of performing light work. (Ex. 2F, p. 2; 15F). Adding degenerative joint disease in surrounding joints as a severe impairment would not alter his residual functional capacity.

AR at 13. Plaintiff argues that the failure to find degenerative changes in plaintiff's right foot to be non-severe was error on the part of the ALJ. Dkt. 13 at 8. There are several problems with the plaintiff's claim. First, as the ALJ noted, in October 2008, Dr. Picco's notes indicate that he advised plaintiff that he "may have degeneration in the surrounding joints … and it could at some point require subsequent surgery for fusion." AR at 335. Dr. Picco went on to state that plaintiff would best be served by "modification of footwear, orthotics and possible corticosteroid injections." *Id.* One month later, Dr. Picco sent a letter to the VA that urged a modification of his disability rating, and then stated "the patient has begun to develop a stress injury and arthritis in his adjacent joints in the midfoot and expect that he will continue to have problems with degenerative foot problems and progression of his arthritis throughout his lifetime." AR at 332. In other words, there was no actual diagnosis beyond that found by

the ALJ.  This is why the medical expert opined that development of degenerative joint disease in surrounding joints was speculative at best during the hearing.  AR at 13, 66.  Plaintiff also argues that a diagnosis would be supported by Dr. Connie Morantes, citing AR at 329. However, Dr. Morantes makes no such diagnosis there or at any other part of the record.  Dr. Morantes also concludes that plaintiff is capable of performing full time work as long as he is not standing.  AR at 440.

At Step 2, an impairment can only be established if the "record includes signs—the results of medically acceptable clinical diagnostic techniques such as tests –as well as symptoms.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  A diagnosis from an acceptable medical source is a prerequisite to a finding that a medically determinable impairment exists.  *Id.* at 1005-06.  As noted above, there is no such diagnosis.

Just as important, the ALJ considered the issue, and also determined that the RFC would not change had there been such a finding.  "Adding degenerative joint disease in surrounding joints as a severe impairment would not alter his residual functional capacity." AR at 13.  This means that even if the ALJ committed error at Step 2, it was harmless error after considering the ALJ's RFC determination.  *Burch v. Barnhart*, 400 F.3d 676, 682-3 (9th Cir. 2005).

Plaintiff argues that the RFC was deficient, or would be deficient, however, because it failed to include a requirement that plaintiff's right leg be elevated.  The ALJ concluded that leg elevation was not medically necessary, stating:

> In another instance, he stated that he elevates his foot.  He testified that if he needed to fix a meal for his children, he would do it quickly, and then go back to elevating his foot.  He elevates his foot while eating as well.  In fact, Dr. Morantes, apparently in reliance on the claimant's statements, opined that the claimant needed to elevate his foot constantly.  However, during the almost 1 ½ hour hearing, he did not elevate his foot or attempt to elevate his foot.  Nor does

the medical record provide adequate support for having to elevate his foot as frequently as he asserts.

. . .

I find that he is able to perform light work as set forth above. Dr. Lorber [the ME] stated that, based on his review of the record, the claimant can perform light level work with some postural and environmental limitations….According to Dr. Lorber, the evidence does not support a finding that the claimant must elevate his foot. Although he tried to use compressive stockings in the past, these stockings were admittedly not custom made. Dr. Lorber stated that custom made stockings would have been more effective (June 2010 Hearing). I give greatest weight to Dr. Lorber's opinion about foot elevation requirements because he is an orthopedist and Dr. Morantes, while an examining provider, is not an orthopedist.

AR at 15-16.

There is no dispute that the only reference to foot elevation is from Dr. Morantes statement dated October 29, 2009. AR at 440. It is also clear that this single document was a form of a "check the box" type of document, with nothing in her medical reports to sustain it. Indeed, she circles the word "constantly" for need to manipulate right hand and left hand, even though there is no alleged impairments of the hand. None of her other medical reports indicate plaintiff is required to elevate his legs. No other physician reported the medical necessity of plaintiff elevating his legs. Dr. Lorber specifically testified that it was not required.

The ALJ, after reviewing the medical record, concluded that this single statement was apparently based on plaintiff's self-reporting. AR at 15. Because the ALJ found the plaintiff to be less than fully credible, the appropriateness of plaintiff's RFC determination is dependent upon the validity of that finding.

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR

96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ offered four reasons to support her adverse credibility determination:  (1) plaintiff stopped work for reasons other than his impairments; (2) plaintiff's daily activities were inconsistent with his subjective complaints; (3) plaintiff did not elevate his foot during the 1 ½ hour hearing; and (4) the objective medical evidence contradicted plaintiff's statements regarding his symptoms and limitations.  AR at 14-15.

The ALJ's proffered reasons are supported by substantial evidence in the record.  First, plaintiff self reported that he ceased working as a security guard because he was laid off and

ORDER - 10

1    further that he was terminated at the lumber mill because other people had seniority over him.

2    AR at 180.  Plaintiff argues in reply that he testified that there were other physical reasons, in

3    addition to the layoffs, that contributed to the termination.  AR at 73-74.  This, however, does

4    not detract from the finding that the termination was not due to plaintiff's impairments.  In

5    *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001), the court held that the ALJ provided

6    "specific, cogent reasons" for an adverse credibility determination based on plaintiff's

7    statements "at the administrative hearing and to at least one of his doctors that he left his job

8    because he was laid off, rather than because he was injured."

9          Second, activities of daily living inconsistent with plaintiff's claimed limitations are a

10   basis for supporting an adverse credibility determination.  *Rollins v. Massanari*, 261 F.3d 853,

11   857 (9th Cir. 2001).  Plaintiff takes care of his two young children while his wife is at work.

12   He engages in shopping, laundry, household chores and cleaning.  He takes his children to the

13   park, cares for himself and can drive.  AR at 16, 77.  Activities that are engaged in by a

14   claimant that are inconsistent with a claimed level of impairment are a proper basis upon which

15   to formulate an adverse credibility determination.  20 C.F.R. §404.1529 (c)(i).  *Molina v.*

16   *Astrue,* 674 F.3d 1104, 1112-13 (9th Cir. 2012).  The ALJ did not err by concluding that

17   plaintiff's daily activities undermined his claimed need for foot elevation and total disability.

18         Third, the ALJ observed plaintiff during the hearing, although the hearing was

19   conducted by video.  The ALJ erred by concluding that plaintiff did not elevate his leg during a

20   1 ½ hour hearing.  Instead, it was about 1 ¼ hour hearing.  Nevertheless, reliance on this

21   observation as part of the overall credibility process is not error.  Plaintiff cites *Orn v. Astrue,*

22   495 F. 3d 625 (9th Cir. 2007) for support of his claim that the ALJ committed error.  However,

23   in *Orn*, the court held that the observations at the hearing alone may not form the "sole" basis

24   for discrediting a plaintiff's credibility, and because the remaining reasons offered by the ALJ

failed, personal observations alone were insufficient. *Id*. at 639-40.  Here, the other reasons offered by the ALJ withstand scrutiny.  The use of the ALJ's observations was not the sole basis for discrediting plaintiff's credibility.  The ALJ did not err.

Fourth, as discussed above, the objective medical evidence contradicts plaintiff's claims about his symptoms and limitations.  Even Dr. Morantes concluded he could perform full time work.

The role of this Court is limited.  As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954.  While it may be possible to evaluate the medical evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.  The ALJ did not err.

B.      The ALJ Did Not Err at Steps 4 and 5

Plaintiff argues that because plaintiff would have to elevate his right foot to work, the findings at Steps 4 and 5, which did not require foot elevation constitute error.  Because the Court has affirmed the finding of the ALJ on the issue of foot elevation, it must also conclude there was no error at Steps 4 and 5 of the disability review process.

//

//

//

//

//

//

ORDER - 12

1

VIII.   CONCLUSION

2

      For the foregoing reasons, the decision of the Commissioner is AFFIRMED and this

3

matter is dismissed with prejudice.

4

      DATED this 3rd day of October, 2012.

5

6

*James P. Donohue*
_____

7

JAMES P. DONOHUE
United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 13